IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOSEPH P., | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 21-cv-00426-SH |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) |

**OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Joseph P. requests judicial review of the decision of the Commissioner of Social Security ("Commissioner") denying his claim for disability benefits under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. § 1381-1383f. In accordance with 28 U.S.C. § 636(c), the parties have consented to proceed before a United States Magistrate Judge. For the reasons explained below, the Court **REVERSES and REMANDS** the Commissioner's decision denying benefits.

**I.    Disability Determination and Standard of Review**

Under the Act, an individual is disabled if he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The impairment(s) must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* § 1382c(a)(3)(B).

Social Security regulations implement a five-step sequential process to evaluate disability claims. 20 C.F.R. § 416.920. "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). Under the five-step process, the Commissioner inquires into: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a severe medically determinable impairment(s); (3) whether the impairment meets or equals a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the claimant can still do his past relevant work; and (5) considering the RFC and other factors, whether the claimant can perform other work. *Id.* § 416.920(a)(4)(i)-(v). Generally, the claimant bears the burden of proof for the first four steps. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At the fifth step, the burden shifts to the Commissioner to provide evidence that other work the claimant can do exists in significant numbers in the national economy. 20 C.F.R. § 416.960(c)(2).

Judicial review of the Commissioner's final decision is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The "threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a scintilla but means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test

has been met," *Grogan*, 399 F.3d at 1262, but it will neither reweigh the evidence nor substitute its judgment for that of the Commissioner, *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.  Background and Procedural History

Plaintiff filed for Title XVI disability benefits with a protective filing date of May 25, 2018. (R. 12, 258-67.[1]) Plaintiff alleges he has been unable to work since 2016, due to a heart attack, back problems, high blood pressure, and leg numbness. (R. 258, 317.) Plaintiff was 54 years old at the time of the ALJ's decision. (R. 23, 36.) Plaintiff has a high school equivalent education and no past relevant work. (R. 22, 38, 318.)

Plaintiff's claims for benefits were denied initially and on reconsideration, and he requested a hearing. (R. 60-81, 97.) ALJ Paul Wood conducted an administrative hearing and issued a decision on May 5, 2021, finding Plaintiff not disabled. (R. 12-23, 30-57.) The Appeals Council denied review on August 4, 2021 (R. 1-6), rendering the Commissioner's decision final. 20 C.F.R. § 416.1481. Plaintiff appeals.

## III.  The ALJ's Decision

In his decision, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since his application date. (R. 14.) At step two, the ALJ found Plaintiff had the severe impairments of cervical degenerative change status-post C3 through C7 fusion, lumbar degenerative changes, bilateral hip degenerative changes, and

---

[1] All references to the record are to the corrected administrative transcript filed by the Commissioner at ECF No. 18.

obesity. (R. 15.) At step three, the ALJ found Plaintiff's impairments did not meet or equal a listed impairment. (R. 16-19.)

The ALJ then determined Plaintiff had the RFC to perform light work that involves no more than occasional climbing, balancing, stooping, kneeling, crouching, and crawling, and frequent use of the upper extremities for reaching, handling, fingering, and feeling. (R. 19.) The ALJ provided a summary of the evidence that went into this finding. (R. 19-22.)

At step four, the ALJ found Plaintiff had no past relevant work to analyze (R. 22), so he proceeded to step five. There, based on the testimony of a vocational expert ("VE"), the ALJ concluded that Plaintiff could perform occupations existing in significant numbers in the national economy, including cleaner, housekeeping; photocopy machine operator; and mail clerk. (R. 22-23.) The ALJ thus found Plaintiff was not disabled. (R. 23.)

**IV.   Issues**

Plaintiff asserts the ALJ erred by: (1) failing to properly evaluate the consistency of his subjective symptoms (ECF No. 15 at 6-11), and (2) failing to properly evaluate the medical source opinion of his primary care provider Dr. David Tucker (*id*. at 11-15). The Court agrees the ALJ erred in his analysis of Dr. Tucker's opinion and does not reach Plaintiff's remaining argument.

**V.   Analysis**

Plaintiff contends the ALJ improperly rejected Dr. Tucker's opinion, because he failed to discuss probative evidence in the medical record that does not support his finding. In particular, Plaintiff asserts the ALJ improperly ignored Dr. Tucker's physical

4

examination findings that Plaintiff had limited range of motion in his neck.[2] The Court agrees.

### A.     Treatment Record and Dr. Tucker's Opinion.

Dr. Tucker, along with other providers at Gravette Clinic, regularly treated Plaintiff for neck and/or back pain between July 2017 and July 2018. (R. 442-58.) At a follow-up appointment on June 15, 2018, Plaintiff reported neck pain, back pain, decreased range of motion in his neck, and numbness and tingling in his upper extremities. (R. 446, 448.) On physical examination, Dr. Tucker found decreased range of motion in Plaintiff's neck with pain on the right side, and decreased muscle tone, strength, and reflexes in Plaintiff's right upper extremity. (R. 448.) Dr. Tucker referred Plaintiff for a cervical spine MRI, the results of which revealed moderate to marked diffuse cervical degenerative disc disease, probable diffuse cervical facet joint arthropathy, and multilevel central canal stenosis and neural foraminal stenosis. (R. 444-45, 449.)

On July 30, 2018, Plaintiff presented to Dr. Daniel Shepherd, a neurosurgeon, for evaluation of his neck and low back pain complaints. (R. 460.) Dr. Shepherd indicated Plaintiff's cervical MRI indicated moderate to advanced stenosis at C3-4, C4-5, C5-6, and C6-7 with prominent disc bulges at these levels, and loss of normal cervical lordosis. (*Id.*) He further indicated Plaintiff had evidence of cervical myelopathy on examination. (*Id.*) Due to Plaintiff's extensive cervical myelopathy and gait impairment, Dr. Shepherd recommended a semi-urgent decompression surgery. (R. 462.) Plaintiff underwent a C3-7 anterior cervical diskectomy and fusion surgery on November 8, 2018. (R. 475-76.) On

---

[2] Plaintiff also asserts the ALJ failed to account for Dr. Tucker's physical examination findings of diffuse tenderness in Plaintiff's neck and back, decreased range of motion in his lumbar spine, and decreased reflexes in his right upper extremity. (ECF No. 15 at 12-13.) The Court finds no error with respect to these findings, because the ALJ accounted for them in the RFC assessment. (R. 21.)

December 18, 2018, Dr. Shepherd indicated Plaintiff was making an excellent postoperative recovery, noting Plaintiff reported his walking was 90% better and his hand function was 65% better, but that he was still experiencing some hand numbness and difficulty with coordination. (R. 503.) Dr. Shepherd recommended an ongoing 25-pound lifting restriction, which he indicated could be readdressed at Plaintiff's next appointment. (R. 504.) The record does not contain any further treatment notes from Dr. Shepherd.

Thereafter, providers at Gravette Clinic, including Dr. Tucker, continued managing Plaintiff's medication for neck and back pain. (R. 522-34, 551-57, 576-89, 592-94, 597-99.) Plaintiff consistently reported he was doing well through February 2020, and a cervical spine x-ray taken January 2, 2020, was unremarkable. (R. 522, 524, 560, 576.) At a follow-up appointment with Dr. Tucker on April 2, 2020, Plaintiff indicated he was applying for disability and needed some paperwork signed. (R. 582.) He reported constant neck and back pain and significant walking limitations, and indicated he never regained his grip strength after his cervical spine fusion surgery. (*Id.*) Dr. Tucker's examination of Plaintiff's neck revealed limited flexion, limited extension, limited rotation to the right and left, limited lateral flexion to the right and left, and diffuse tenderness. (R. 584.) Dr. Tucker advised Plaintiff that he agreed Plaintiff was unable to "do a manual job" consistently without missing a "lot of work and getting multiple breaks." (R. 585.) Dr. Tucker's remaining treatment notes indicate Plaintiff was stable on his pain medication and did not experience any side effects. (R. 587, 592.) However, Plaintiff reported back pain, joint pain, and joint stiffness at these appointments, and Dr. Tucker's physical examinations found minimal range of motion in Plaintiff's neck, particularly as to flexion or extension. (R. 587-88, 592-93.) Dr. Tucker indicated

Claimant had "minimal ability to turn his head to the right or left" in a treatment note dated February 1, 2021. (R. 592-93.)

Dr. Tucker completed a form titled "Medical Source Statement – Physical" on October 2, 2020. (R. 567-70.) Therein, he opined that Plaintiff could lift/carry less than ten pounds frequently, ten pounds occasionally, and 20 pounds rarely; sit for 15 minutes at one time and 2 hours total in an 8-hour workday; and stand for 15 minutes at one time and 2 hours total in an 8-hour workday. (R. 568.) As to postural limitations, Dr. Tucker indicated Plaintiff could never twist, stoop, balance, crouch, or crawl, and could rarely climb. (*Id.*) Dr. Tucker further opined that Plaintiff required the ability to change positions at will, needed to take unscheduled breaks 1-3 times per day lasting 15-20 minutes each, required the use of a cane or assistive device, would be off task 25 percent of an 8-hour workday, and would be absent or leave early more than 4 days per month. (R. 568-69.)

### B.   Requirement for Considering and Discussing Medical Opinions as Evidence.

For claims filed on or after March 27, 2017, an ALJ does not defer or give any specific evidentiary weight to medical opinions. 20 C.F.R. § 416.920c(a). Instead, the ALJ evaluates the "persuasiveness" of such opinions by considering five factors. *Id.* § 416.920c(a) & (c). Of those five factors, the ALJ must always explain how he considered two—supportability and consistency. *Id.* § 416.920c(b)(2). Supportability is internal to the medical source—"The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." *Id.* § 416.920c(c)(1). Consistency is more external—"The more consistent a medical opinion(s) . . . is with the

evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* § 416.920c(c)(2).

If the record demonstrates the ALJ considered all the evidence, the ALJ is not required to discuss every piece of that evidence. *Clifton v. Chater,* 79 F.3d 1007, 1009-10 (10th Cir. 1996). But, the ALJ is required to "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.* at 1010.

### C. The ALJ's Treatment of Dr. Tucker's Opinion.

In his written opinion, the ALJ found Dr. Tucker's October 2020 medical source statement indicated "a high degree of limitation" which was unsupported and inconsistent with the physical examinations in the treating record. (R. 21.) Specifically, he found Dr. Tucker's opinion that Plaintiff would miss more than four days of work per month was not reflected in Dr. Tucker's own treatment notes. (*Id.*) ALJ then found Dr. Tucker's lifting restrictions inconsistent with Dr. Shepherd's opinion that Plaintiff could lift 25 pounds. (*Id.*) The ALJ thus concluded that Dr. Tucker's opinion was unpersuasive. In making this determination, however, the ALJ neither acknowledged nor discussed Dr. Tucker's objective findings that Plaintiff had minimal range of motion in his neck, minimal to no flexion or extension in his neck, and minimal ability to turn his head left or right. (R. 588, 593.) This evidence was significantly probative and directly relevant to the supportability of Dr. Tucker's opinion that Plaintiff could perform less than sedentary work and required numerous postural and other non-exertional limitations that were more restrictive than the ALJ found in the RFC. It was error for the ALJ to rely solely on evidence supporting his finding that Plaintiff could perform light work with fewer non-exertional limitations, while ignoring evidence contrary to his conclusion. *See Hardman*

*v. Barnhart,* 362 F.3d 676, 681 (10th Cir. 2004) ("It is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."); *cf. Aday v. Colvin,* No. CIV-13-431-R, 2014 WL 2766080, at *2-3 (W.D. Okla. June 18, 2014) (finding error where the ALJ ignored a consultative examiner's finding of reduced range of motion in claimant's arm and the RFC assessment did not include any manipulative limitations).

## VI.   Conclusion

The ALJ's decision finding Plaintiff not disabled is **REVERSED and REMANDED** for proceedings consistent with this Opinion and Order.

**SO ORDERED** this 22nd day of August, 2023.

_____
SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT